IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Key,                          :
                    Petitioner        :
                                      :
        v.                            :  No. 521 M.D. 2020
                                      :  SUBMITTED: June 4, 2021
Pennsylvania Department of            :
Corrections,                          :
                    Respondent        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: August 3, 2021

Petitioner Brandon Key, an inmate currently incarcerated within our Commonwealth's prison system, has filed a petition for review (PFR) in our original jurisdiction. Therein, he challenges Respondent Pennsylvania Department of Corrections' purported habit of discarding dust jackets from print publications that have been mailed to inmates, and consequently seeks injunctive relief. In response, the Department filed the instant preliminary objections, through which it challenges Key's claims and requests dismissal of the PFR.

## I. Discussion

The relevant facts, as gleaned from Key's PFR and the exhibits attached thereto, are as follows. Key ordered five books at an unspecified time from Edward R. Hamilton Bookseller, Co., which were delivered to the State Correctional Institution at Somerset (SCI-Somerset), where Key was incarcerated. PFR, Ex. E at 1. In late January or early February 2019, the books were processed by staffers in SCI-Somerset's mailroom, who confiscated or discarded the books' dust jackets

before delivering the books to Key. *Id.* Key filed an inmate grievance on February 24, 2019, claiming that the Department's treatment of these dust jackets violated his constitutional rights under the First and Fourteenth Amendments.[1] *Id.* Key's grievance was denied, as were his subsequent administrative appeals of that denial. *See id.* at 2-3; *id.*, Ex. F.

On June 2, 2019, Key sent $10 to CNA Entertainment, LLC, for "photo catalogs." *Id.*, Ex. C at 1-2. The catalogs never arrived, prompting Key to contact both CNA and SCI-Somerset's mailroom in an effort to track them down. *Id.* On September 5, 2019, mailroom staffers informed Key that his catalogs had been rejected due to the fact that his prisoner identification number had not been correctly printed on the mailing label. *Id.* Key then filed another inmate grievance on September 25, 2019, in which he argued that the mailroom staffers' decision to reject his catalogs without affording him notice or an opportunity to contest the rejection violated 37 Pa. Code § 93.2, *i.e.*, the administrative regulation governing inmate correspondence,[2] as well as his right to due process under the Fourteenth

---

[1] U.S. Const. amends I, XIV.

[2] This administrative regulation states, in relevant part:

> (b) Restrictions. The following restrictions apply:
>
> . . . .
>
>> (2) Correspondence containing threatening, obscene or explicit sexual material, or nudity as well as correspondence containing criminal solicitation or furthering a criminal plan or institution misconduct is prohibited.
>
>> . . . .
>
> (c) Incoming mail. Mail sent to a facility will be opened and examined for contraband in the facility's mailroom or designated area except when permitted under paragraph (1).

**(Footnote continued on next page…)**

Amendment. *Id.* Like with his first grievance, Key's second grievance was denied, as were his subsequent administrative appeals. *See id.*, Ex. C at 3-5; Ex. D.

On September 4, 2020, Key filed the instant PFR with our Court, which contains extremely limited factual averments, as well as two counts articulating

. . . .

(f) Rejection of correspondence. An item of correspondence which appears to violate subsection (b) may be rejected by facility mailroom staff. The inmate and the sender, in cases when the inmate is not the sender, will be notified when the letter is rejected. The letter will be held for at least 7 business days after mailing of the notification to permit reasonable opportunity to protest the decision. If the letter is rejected, it will be returned to the sender.

(g) Incoming publications.

(1) A publication review committee consisting of staff designated by and reporting to the facility manager or a designee shall determine whether an inmate may receive a publication.

(2) Publications shall be received directly from a publisher, bookstore, book club, distributor or department store. Newspapers shall be mailed directly from the publisher.

(3) Publications may not be received by an inmate if they:

(i) Contain information regarding the manufacture of explosives, incendiaries, weapons, escape devices, poisons, drugs or intoxicating beverages or other contraband.

(ii) Advocate, assist or are evidence of criminal activity, inmate misconduct, violence, insurrection or guerrilla warfare against the government.

(iii) Threaten the security of a facility.

. . . .

(8) Covers of hardbound publications may be damaged or removed during inspection in the discretion of mailroom staff.

37 Pa. Code § 93.2.

broad legal arguments. In Count I, Key alleges that DC-ADM 803,[3] the Department's formal document setting forth its policies for handling inmate mail and incoming publications, does not contain "any requirement that an inmate be notified and heard before his/her mail is rejected." PFR, ¶14. Key claims that this alleged "failure to ensure that DC-ADM 803 'give[s] effect' to the notice-and-hearing language of 37 Pa. Code § 93.2(1) is a violation of the Rules of Statutory Construction, 1 Pa. C.S. § 1922, 1923; [T]he Administrative Code of 1929, 71 P.S. § 186;[[4]] and the Due Process Clause of the 14th Amendment[.]" *Id.*, ¶15. In Count II, Key alleges that the plain language of 37 Pa. Code § 93.2 does not authorize the Department to discard dust jackets from publications and printed materials that have been sent to inmates. *Id.*, ¶¶22-29. Accordingly, Key requests that we order the Department to "amend DC-ADM 803 to give effect to the notice-and-hearing language of 37 Pa. Code § 93.2(f) . . . [and] conduct its inspections of inmates' incoming hardbound publications within the bounds of 37 Pa. Code § 93.2(g) by ceasing confiscations of hardbound publications' paper dust jackets that do not contain contraband." *Id.*, Wherefore Clause. The Department then filed the preliminary objections that are the subject of this opinion.

## II. Discussion

The Department objects to Key's PFR for five reasons, which we summarize as follows. First, Key's arguments about DC-ADM 803 are incorrect, as that policy allows the Department to reject mail sent to inmates that it deems impermissible and

---

[3] Key attached a copy of DC-ADM 803 as an exhibit to his PFR. *See* PFR, Ex. B. DC-ADM 803 can also be accessed through the Department's website at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf.

[4] Section 506 of the Act of April 9, 1929, P.L. 177.

4

grants inmates the ability to challenge a rejection through the inmate grievance process. Department's Br. at 9-11. Additionally, through DC-ADM 803, the Department gives inmates broader rights than those required under 37 Pa. Code § 93.2 and affords them a constitutionally adequate level of due process. *Id.* Second, Key's allegations that the Department and/or its third-party contractors are not enforcing the inmate mail policies established by 37 Pa. Code § 93.2 and DC-ADM 803 are insufficiently specific. *Id.* at 11. Third, 37 Pa. Code § 93.2 allows mailroom staffers in the Department's correctional facilities to damage or remove dust jackets during inspection of incoming mail and does not bar staffers from destroying or discarding those dust jackets. *Id.* at 12-13. Fourth, the destruction of dust jackets is reasonably related to the Department's legitimate penological interests in institutional safety and security; therefore, its regulations allowing for such destruction are constitutionally adequate under the test formulated by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). *Id.* at 13-16. Finally, Key has failed to state a viable claim for injunctive relief. *Id.* at 16-18.

When considering preliminary objections, "[o]ur review . . . is limited to the pleadings and proper attachments." *Scarnati v. Dep't of Env't Prot.*, 220 A.3d 723, 728 (Pa. Cmwlth. 2019). In the context of such consideration,

> we must accept as true all well-pleaded material allegations in the petition for review as well as all inferences reasonably deduced therefrom. The court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. . . . In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, any doubt should be resolved by a refusal to sustain them.

*Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994) (internal citations omitted). With regard to demurrers in particular, a petitioner is "under no burden to prove their

5

cause of action. [Instead, the court is tasked with deciding] whether the facts in the petition are sufficient to entitle them to relief." *Marinari v. Dep't of Env't Res.*, 566 A.2d 385, 388 (Pa. Cmwlth. 1989).

Initially, we note that Key makes expressly clear in his response to the preliminary objections that his "claims are based on Pennsylvania's Administrative Code and Rules of Statutory Construction. This analysis does not involve *Turner* [*v. Safely*]." Key's Br. at 8. As such, though Key referenced the 14th Amendment's Due Process Clause several times in his PFR, it appears that he never intended or no longer wishes to challenge[ ] the Department's handling of inmate mail on constitutional due process grounds. The Department's preliminary objections to Key's putative constitutional claims are thus rendered moot.

As for the Department's remaining preliminary objections, which relate to Key's regulation and policy-based arguments, we need only address its contention that Key has failed to state a viable claim for injunctive relief in order to dispose of this matter.

> An injunction is an extraordinary remedy that should be used with caution and only where the rights and equity of the petitioner are clear and free from doubt and the harm to be remedied is great and irreparable. . . . The required elements of injunctive relief are: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested.

*Green v. Wolf*, 176 A.3d 362, 365 n.5 (Pa. Cmwlth. 2017) (internal citation omitted).

In Count I of his PFR, Key alleges that DC-ADM 803 contravenes the requirements of 37 Pa. Code § 93.2 because "the [Department] failed to include in DC-ADM 803 any requirement that an inmate be notified and heard before his/her mail is rejected." PFR, ¶14. This, however, is a manifestly inaccurate reading of both

6

37 Pa. Code § 93.2 and DC-ADM 803. Of relevance here, Section 93.2 states that mailroom staffers can reject correspondence that has been sent to an inmate, in the event they deem such correspondence to be prohibited, but must notify the inmate in writing and hold the offending item for at least seven business days thereafter, in order to allow the inmate a reasonable opportunity to challenge the decision. 37 Pa. Code § 93.2(b), (f). In addition, Section 93.2 provides that each of the Department's correctional facilities must set up a "publication review committee," which is responsible for "determin[ing] whether an inmate may receive a publication." *Id.*, § 93.2(g)(1). Nothing in Section 93.2, however, sets forth whether or how an inmate may challenge the committee's rejection of a publication.

This is in contrast to DC-ADM 803, which articulates thoroughly detailed procedures for handling incoming correspondence and publications, as well as issues stemming therefrom. Per DC-ADM 803(1)(B)(2), in the event that mailroom staffers deem all or part of correspondence sent to an inmate to be prohibited, they are required to fill out a Notice of Unacceptable Correspondence Form and send it to the affected inmate, who then has the right to administratively challenge the staffers' decision by filing a grievance within 15 days of the date upon which the Notice was sent. *Id.*, Ex. B at 11-12. The mailroom staffers are required to store the correspondence until the grievance process has been completed, whereupon, depending on the outcome, it will either be delivered to the inmate, returned to the sender at the inmate's expense, or destroyed. *Id.* at 12. In addition, per DC-ADM 803(2)(D), each of the Department's correctional facilities are required to create an Incoming Publications Review Committee (IPRC) to deal with publications that are mailed to inmates. *Id.* at 37-38. The IPRC must consider incoming publications within 10 days of their receipt and is required to notify an inmate, in writing and

7

within 2 business days, in the event it elects to reject one. *Id*. Furthermore, DC-ADM 803(2)(E)(2) permits an inmate to dispute an adverse IPRC decision by filing a grievance and, if an inmate files such a grievance, the affected publication must be stored by mailroom staffers pending the outcome of the process. *Id.* at 41-42. DC-ADM 803 thus meticulously lays out formal procedures for notifying an inmate that an item mailed to them has been deemed unacceptable, as well as for the inmate to administratively challenge such a determination, all of which are far more extensive and protective than those called for through 37 Pa. Code § 93.2. Given this, Key lacks a clear right to relief regarding Count I, since the argument he makes therein is simply incorrect.

Similarly, Key has failed to state a viable claim for injunctive relief in Count II. Though Key argues that the Department has a habit of confiscating and destroying dust jackets from publications that have been mailed to inmates, and maintains that this behavior is not authorized by 37 Pa. Code § 93.2, he does not explain to any degree how or why an injunction is "an urgent necessity to avoid an injury that cannot be compensated in damages[.]" *Green*, 176 A.3d at 365 n.5. As such, Count II, as currently constituted, does not satisfy the irreparable harm requirement for injunctive relief.[5]

---

[5] We note that, per Pa. R.C.P. No. 1033, litigants should be allowed to amend their pleadings with great liberality, unless the defects contained therein cannot be corrected through amendment. *See Werner v. Zazyczny*, 681 A.2d 1331, 1338 (Pa. 1996). However, a court does not have "to *sua sponte* order or require a party to amend his pleading." *Id.*

### III. Conclusion

In light of the foregoing analysis, we sustain the Department's demurrer to the viability of Key's requests for injunctive relief and consequently dismiss Count I of the PFR with prejudice and Count II without prejudice.[6]

_____
ELLEN CEISLER, Judge

---

[6] As for the remainder of the Department's arguments, we decline to address them in light of the fact that our rulings regarding Key's requests for injunctive relief completely dispose of Key's PFR.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Key,              :
          Petitioner      :
                     :
      v.                   :   No. 521 M.D. 2020
                     :
Pennsylvania Department of     :
Corrections,                :
          Respondent    :

# **O R D E R**

AND NOW, this 3rd day of August, 2021, upon consideration of Respondent Pennsylvania Department of Corrections' preliminary objections to Petitioner Brandon Key's Petition for Review, and the response thereto, it is hereby ORDERED:

1. Respondent's demurrer to Petitioner's requests for injunctive relief is SUSTAINED;

2. Count I of the Petition for Review is DISMISSED WITH PREJUDICE;

3. Count II of the Petition for Review is DISMISSED WITHOUT PREJUDICE.

_____
ELLEN CEISLER, Judge